ALLEN, P.
This case is one of the first impression in this court, and I have had some difficulty in arriving at any conclusion satisfactory to my own mind. „ The difficulty has been somewhat increased) by the conflicting pretensions relied on by the appellee to defeat the claim. The allegations of the answer that the testator had no intention of exacting payment when the money was advanced, and that the appellee without his knowledge executed the deed of trust and spread it upon record, are refuted by an exhibition of the deed itself. From that, as it appears in the record, it seems that the deed was actually execxxted by all the parties, inclxiding the testator, and recorded upon their acknowledgment. The *106 debt must therefore have been considered as an actual debt at that time, and the deed accepted as a security for it. And as to the claim that the debt was actually paid by the services rendered to his uncle by the nephew: No account for them seems ever to have been kept or charge made for them; and although they may with other considerations have operated on the creditor in *inducing him to forgive the debt, I do not think the evidence shows that either party treated those services in the light of business transactions entering into the accounts of the parties.
I think, however, in view of all the circumstances of this case, and the relation in which the parties stood towards each other, enough appears to show that if the debt has not been actually released, yet that the creditor in favor of his debtor, has himself treated it as released, or in the language of the books, dead in point of effect. That whether the uncle contemplated a gift or not when the deed was executed, or united in the transaction not with the intention of exacting payment of the money really advanced, but to protect the property of the nephew from other claims, it is, I think, manifest that long before his death he treated this debt as released and forgiven. In the case of Wekett & ux. v. Raby, 2 Bro. Par. Ca. 386, the circumstances were not as strong. There the deceased on his death bed desired his executrix and residuary legatee not to trouble his debtor for a bond debt, saying that he did not deliver up the bond, for he might want it more than the debtor, but when he died the debtor should have it; he should not be asked or troubled for it. The debtor had been counsel for the creditor, but a dispute had occurred between them when the bond was executed, and they had not been friendly thereafter. Bord Macclesfield decreed that the bond should be surrendered to be canceled and satisfaction acknowledged; and his decree, upon appeal to the house of lords, was affirmed.
In the recent case of Flower v. Martin, 2 Milne & Craig 459, 14 Cond. Eng. Ch. R. 459, the case of Wekett & ux. v. Raby was approved and followed. In the last case a father had taken a bond from the son for advances under circumstances which induced the court to believe he did not intend to exact payment, *or to hold it as a security to be put in force against his son for the benefit of his estate, but rather as a check upon his future conduct. In these and other cases referred to in 2 Story’s Fq. Jur. § 705 a, 706, 706 a, the debt was secured by bond or note, and its existence as a valid claim was undisputed. In the leading case of Wekett v. Raby it was regarded and treated by the creditor as a subsisting debt, which he, at the time of making the declarations on his death bed, had still a right to enforce; but not intending that it should be regarded as a debt due from his debtor to his estate, and to be put in force accordingly, the court gave relief. In the case before us, the uncle was a bachelor of advanced age, and owning a large estate, the nephew resided near him, was a favorite nephew, and apparently poor and embarrassed with debt. When the money was advanced, no note or bond seems to have been required or given, and the deed of trust contains no covenant to pay the debt. More than twenty years elapsed between the execution of the trust deed and the uncle’s death. During all this time no demand was made for payment. The only evidence we have that the deed was, regarded as a subsisting security b3^ anybody, arises out of the fact, that the debtor being desirous of selling some of the slaves for his own benefit, applied to the uncle for his permission to do so. It was readily given until the security was nearly exhausted, it being shown by the proof that sales were made from time to time, and the answer averring that nearly all the slaves were so disposed of, and but three, not exceeding four hundred and fifty dollars in value, remained unsold. When applied to for his permission, the uncle declared that he never claimed or expected any benefit from the deed, and that he had permitted his nephew to sell all the slaves of any value. The fact that he did assent to such sales until the security was nearly exhausted, *proves the truth of his declaration that he did not claim any benefit from the deed, the only security or evidence of debt he held. In addition to this the uncle, on another occasion, is proved to have observed to another nephew, who was desirous of borrowing money from him, that the services of the appellee were equal and more than equal in value to him, to the money advanced.
The fact, that services through a long course of years were rendered, is placed beyond doubt by the verdict of the jury upon the issues directed in the cause. There being no exception spreading the facts upon the record, we must take it that they justified the finding of the jury. They find that the appellee rendered such services from the date of the deed in September 1823 to the death of the uncle in November 1843; and estimate their value at one hundred and fifty dollars per annum through the whole period. Without regarding these services in the light of payments or legal offsets, the fact that they were rendered, that they were regarded by the creditor as valuable, equal according to .his declarations to the money advanced, is a circumstance tending strongly to confirm the conviction produced by all the other circumstances, that the uncle regarded the debt released and forgiven to his debtor. Such services furnished an additional inducement for the uncle so to regard the debt. It is a circumstance not appearing in the cases referred to, and makes this a much stronger case for relief than any of them. Taking into consideration the relationship between the parties; the fact that the appellee was a favorite nephew; the omission of the creditor to assert any claim under the deed during his life time, though he lived twenty *107 years after it execution ; the sales from time to time, with his knowledge and consent, for the debtor’s benefit, of nearly all the slaves conveyed; his declaration that he *claimed no benefit from the deed; his admissions that the services of his nephew to him were equal in value to the money advanced; the fact established by the verdict of the jury, that valuable services were rendered, extending over the whole period intervening between the deed and the death of the creditor; I feel satisfied. that looking at this transaction as one exclusively between a creditor and his debtor, it was the intention of the former to treat the debt as forgiven and released to the debtor. I think, therefore, it is a case in which a court of equity might properly stay its hand, and refuse its assistance to the executors of the creditor seeking its aid to enforce this deed for the benefit of their testator’s estate.
I am for affirming the decree.
The other judges concurred in the opinion of Allen, J.
Decree affirmed.