# WHEELING.

## HENRY v. DAVIS.

### July 15, 1874.

Upon a motion to grant a new trial, on an issue out of chancery, and refused by the court, the bill of exceptions certifies the evidence, and not the facts proved on the trial.—HELD:

1. An appellate court will not take cognizance of the case and reverse the judgment, unless by rejecting all the parol evidence for the exceptor, and giving full force and credit to that of the adverse party, the decision of the court below still appears to be wrong.

2. Instructions to the jury should be pertinent to the issue, and not addressed to a different inquiry than that contained therein; and should not be couched in ambiguous language, or be of doubtful meaning, and if otherwise, they should be refused.

Appeal, by Henry G. Davis, from a decree of the circuit court of Doddridge county rendered on the 3rd day of May, 1872, in a suit therein pending, wherein Eugene Henry was complainant and said Davis, Benjamin Wilson, T. K. Knight and Benjamin F. Martin, respondents.

The material facts appear in the opinion of Paull, Judge.

The Hon. Chapman J. Stuart, judge of said circuit court, presided at the trial and hearing below.

*Caleb Boggess* for the appellant.

*Daniel Lamb and C. C. Cole,* for the appellee.

PAULL, JUDGE:

The following principles appear to have been decided by the court of appeals of Virginia, in regard to issues out of chancery:

*First.* When an issue is tried it is under the superintendence of the court, which will prevent the introduction of improper testimony; and if the verdict be against evidence, the court will so certify, and the chancellor will not be satisfied with it. *Plesant Shore & Co. v. Ross,* 1 Wash., 156; *Southall v. McKeand, Id.,* 336.

*Second.* It is matter of sound discretion whether the chancellor should direct the issue, or decide the questions of fact for himself; and like matter of discretion, whether he should set aside the verdict on the issue or not; he is not bound to set it aside in deference to the certificate of the judge of the court of law against it. *Grigsby v. Weaver,* 5 Leigh, 197. Judge Carr delivering the opinion of the court in that case, said : "Issues are not directed to get a new supply of evidence when they have not enough ; but where there is clashing and conflicting evidence leaving the fact in doubt, and rendering it necessary to weigh the character and credibility of witnesses, the chancellor who sees them only on paper, considers that his conscience can be better satisfied by the verdict of a jury who shall see and hear them."

Brooke J., who concurred in the opinion, said : "Weighing the verdict of the jury which is supported by the evidence of the record, I think, (admitting the chancellor was right in directing the issue) that the verdict must outweigh the certificate of the judge. Both were intended to satisfy the conscience of the chancellor."

*Third.* Upon all trials at law of issues out of chancery, all the proceedings upon the trial of the issues as spread upon the record thereof, constitute part of the certificate of the verdict, and with it become part of the chancery record. *Watkins and wife v. Carlton,* 10 Leigh, 560. Judge Tucker delivering the opinion of the court, says : "And upon this point, I observe that I shall take the whole proceedings in the court of law upon an issue directed out of chancery for the purpose of ascertaining a particular fact, to be part and parcel of the chancery cause.

The court of law is but ancillary to the court of chancery; it has no jurisdiction in such case, except that which is derived from the chancellor's order; it must pursue its directions, admitting papers to be read which he orders to be read; and, if required, it must certify any instructions which are given to the jury, that the chancellor may decide whether they were rightly given or not; finally, it can give no judgment on the verdict, but must certify it to the court of chancery to avail there as it may."

*Fourth,* Upon an issue directed out of Chancery the verdict of the jury is conclusive when there is no exception spreading the facts proved upon the record. *Fitzhugh's Exors. v. Fitzhugh,* 11 Gratt. 210. In this case it was held, when an issue is directed in a chancery cause, and a verdict is found, to which no exception is taken and a decree is rendered thereon, the facts found in the verdict must be regarded in the appellate court, as the established facts in the case.

From the views and principles thus presented in regard to chancery issues, let us endeavor to understand, what is now the position of the chancellor, and of the appellate court, and what are their respective powers or duties, and the views by which they shall be controlled.

The chancellor unable from the evidence in his possession, to determine satisfactorily what is the fact in controversy, directs an issue to be tound and tried in a court of law, that he may have the aid or benefit of the verdict of a jury. It is in cases generally, if not exclusively, of conflicting evidence, involving the credibility of witnesses, that such issues are directed. This mode of proceeding by chancery courts, was not founded, I apprehend, on the idea, to any extent, that a body of twelve men, was more competent than the courts themselves, to make the proper deductions, and the more readily and truly to ascertain the fact in question, if exactly the same evidence in the same form was before them, as before the

jury. But this jury trial was based upon the fact, that before the jury additional testimony might be introduced; but especially that the jury would be able to see the bearing and manner of the witnesses on the trial, and to form a better estimate of their credibility in cases of conflict and of doubt. Of these matters, formerly, the chancellor could know nothing—the jurisdiction of the law and chancery courts being vested in different persons; this then was the chief advantage sought for in this mode of proceeding. The verdict was certified to the chancellor, and might or might not be accompanied with a certificate of the facts proved, or of the evidence, or of the opinion of the judge who presided at the trial, or of any of the proceedings which attended it. The chancellor was in no way bound by the verdict, when received. It was not at any time, and is not now, anything more than a mere opinion, whose chief value is supposed to consist in the way in which it was or is obtained. It has no legal or binding effect upon any court, tribunal, person or thing whatever; and this is equally true whether the trial in which it was had appeared from the record to have been free from errors in the rulings of the court touching instructions, or evidence, or any other respect whatsoever. The chancellor did not sit as an appellate court to revise or review the action of the court of law, and did not grant new trials merely because there were errors in the proceeding. These were considered matters of indifference in themselves as it was in the power of the chancellor, in a review of the whole case, to prevent their operating any prejudice to the rights of the parties. All that he desired was additional information to be found in the verdict of the jury; and when this was furnished, and he was satisfied, the enquiry ended. If he was not satisfied, he might direct another trial, and so continue in this way his pursuit of information; and in this way he might obtain verdicts of an opposite character, but he was bound by none of them, and might decide the case according to his own views of

the evidence before him, or accept the aid of a verdict at his pleasure.

When the jurisdictions of the chancery and law courts was separate, it is obvious that the appellate court and the chancellor occupied precisely the same relative position to the proceedings of the court of law, neither being present and having only the record to guide them. The appellate court had just the same means of judging of their character, and of arriving at just conclusions, respecting their effect in developing the fact in question, and might upon a review of the whole case, simply affirm, or reverse the decree of the chancellor, and itself make a final disposition of the cause. If, however, the case did not seem satisfactory to the appellate court, and there was reason to believe that fuller and more satisfactory information touching the fact in question might be obtained, that court might direct another trial by jury, upon its own motion—its powers and those of the chancellor being the same. In the case of *Ross v. Pynes* 3 Call. 568, there were two verdicts of the jury one way, and two certificates of the judges against them, as being contrary to evidence, and in each case the court of appeals said that the chancellor ought to be satisfied with the finding, notwithstanding the opinion of the judge; in other words the chancellor was not to wait and endeavor, by repeated trials, to secure an agreement between the court and jury which tried the case, as to the weight of the evidence; still the chancellor was at liberty, as seen by the cases, to inspect the whole record of the proceedings, and render his decision, according to the best dictates of his own judgment as informed or enlightened by the means thus employed; but the value to be attached to the verdict of the jury was intimated in that case, by the court of appeals, as well also as in the case of *Grigsby v. Weaver* in 5 Leigh., before cited, in which the certificate of the judge was against the evidence; but the chancellor disregarding it, entered a decree in

accordance with the finding of the jury, and his action was affirmed by the appellate court.

Again, we note, particularly, the difference between a verdict in a case brought in a court of law, and a verdict rendered in an issue out of chancery : In the former case, the verdict if sustained and judgment entered upon it, becomes of binding and conclusive effect between the parties ; hence the controlling importance of the rules, in admitting and excluding testimony, and in giving or withholding instructions, and in all the proceedings. Hence, for a material error in any of these respects, or if the verdict is plainly or palpably against the evidence, as well as for other matters, a new trial will be granted. It is very different however with a verdict in a chancery issue ; its office is simply to inform or enlighten the judgment of the chancellor, and when he is satisfied upon a review of the whole case, what might be esteemed errors in a court of law, may be here disregarded. Nevertheless, if this mode of procedure is to be of any value, the results obtained are to be respected; the verdict fairly had is to be regarded, and have its proper weight in the ultimate decision, as intimated by the court in the cases before cited. Such are some of the principles appertaining to issues out of chancery when the two jurisdictions of law and chancery were vested in different persons.

But now the chancellor himself, as judge of the law court, presides over the trial of the issue, which he has himself directed. He has now the advantage, which his predecessor under the former system had not, to-wit : of seeing the manner and bearing of the witnesses, and the circumstances under which they testify. As we have seen, it was the absence of this advantage heretofore which led to this mode of proceeding. The verdict and proceedings are certified as heretofore, or at least supposed to be, to the chancellor ; they still become a part of the chancery case, and all matters in reference to them, are addressed to the chancery court. The same

powers are still exercised by the chancellor, and his decree is founded upon the whole case, as now presented.

So, also, the same position, to the case, is still held, by the appellate court.

With this notice of the law, let us examine the case under consideration, and apply such of the foregoing principles as are requisite for its determination, in connection with the rules applicable to new trials.

Eugene Henry filed his bill in the circuit court of Doddridge county, in June, 1866, for a specific performance of a contract made between himself and the defendant Henry G. Davis bearing date on the 19th day of July, 1865, for the sale of a tract of land containing three hundred and thirteen acres, setting forth the provisions of the contract, and circumstances under which it was made. In November, 1866, defendant Davis filed his answer, resisting the execution of said contract on the ground of fraud, and in December, 1866, filed his cross bill, setting up the same ground or charges of fraud in the procurement of said contract, and prays for its rescission. At the October term 1867, the plaintiff Henry filed his answer to the cross-bill, denying all fraud and wrong.

Depositions were taken by the parties on either side, and at the May term 1869, the cause was heard on the pleadings aforesaid, with the replications to the answers, and on the exhibits and evidence, and a decree was rendered against the defendant Davis for the payment of the balance of the purchase money due upon said contract, and providing, if such payment was not made, that the said tract of land should be sold for payment thereof. From this decree an appeal was taken to the Supreme Court of Appeals. At the January term of that Court in 1871, the decree of the circuit court was reversed, and an issue out of chancery directed to try this question, to-wit: Whether the said Henry G. Davis at the time of entering into the contract of the 19th day of

July, 1865, with the said Eugene Henry, had knowledge of and was fully informed as to the extent of the fraud practiced upon him by the said Henry, which induced him to enter into the said contract of the 9th of March, 1865. This issue was tried in the circuit court of Doddridge county, and at the September term 1871 a verdict was rendered that said Davis had knowledge of and was fully informed as to the extent of the fraud practiced upon him by said Henry, which induced him to enter into the said contract of the 9th of March, 1865, at the time of entering into the contract of the 19th day of July, 1865. The defendant moved the court to set aside the verdict of the jury, on the ground that the same is contrary to the evidence, and because of improper influences brought to bear upon the jury. This motion was overruled by the court. Certain instructions to the jury were asked for by the counsel of defendant Davis, which the court refused to give, and the defendant excepted, and set forth the instructions in two bills of exception which appear upon the record. Upon the motion for a new trial being overruled as before stated, the defendant excepted, and prayed the court to certify the evidence given on the trial to the jury, which was done, and the same appears in a bill of exceptions in the record. At its May term 1872, the circuit court rendered a decree against said Davis for the unpaid residue of the purchase money due upon said contract, and providing for a sale of the land for that purpose. From this decree an appeal is taken to this Court.

This case is now presented here for hearing and determination upon the former record, and upon all the proceedings of the court of law, had upon the trial of the issue, as directed by the Supreme Court of Appeals ; and upon the review of the whole case, as thus presented, such order or decree must now be entered, as will be satisfactory to this Court sitting as a Court of chancery.

We observe, in the first place, that an inspection of the former record discloses nothing, which does or can

exert any commanding or controlling influence upon the decision now to be made. The Supreme Court of Appeals simply adjudged that the contract of the 5th of March, 1865, was procured by fraud, and that the same was void, or at least voidable, at the instance of the defendant Davis, and that in further determination of the matters in controversy between these parties, it was eminently proper, from the "vague and indefinite character of the testimony," that an issue should be directed to ascertain whether said Davis had knowledge of, or was fully informed, of the extent of the fraud practiced upon him by said Henry, which induced him to enter into the contract of March 5, 1865; and whether he had this knowledge or information at the time of entering into the contract of the 19th day of July, 1865. We are, therefore, limited in our present duty to the proceedings of the law court, and its results, as appearing in the present record. The chief matter here appearing, is the verdict of the jury. They find that defendant Davis had knowledge of, and was fully informed, as to the subject matter to which their attention was directed by the issues. What is our duty in regard to this verdict? Upon the authority of the cases heretofore cited, as well as from the nature of the proceeding itself, unless there is some controlling consideration otherwise appearing in the history of the case, the verdict should be respected; if there was no exception appearing in the record, the facts found by it, says one of those authorities, must be regarded as established. The Supreme Court of Appeals, in this case, has said that the testimony is "vague and indefinite;" the counsel, on both sides, have admitted that the testimony is contradictory, and an examination of the same fully confirms the suggestion of the court, and the admission of counsel. Upon its face rests uncertainty, conflict, doubt and discredit of witnesses. Under these circumstances, the verdict is entitled to peculiar regard. In determining the proper disposition to be made of the verdict on this motion for a new trial,

we see no objection to applying the rules observed in courts of law, on similar motions, and these rules have been cited by counsel on both sides, and relied on in argument.

Here the *evidence* has been certified, and not the *facts* proved, in which case the rule, as laid down in *Carrington v. Goddin*, 13 Gratt., 587, applies, to-wit: the court will reject all the parol evidence of the exceptor, and give full force and credit to all the evidence of his adversary, and will not reverse the judgment, unless it then appears to be wrong. Upon a careful examination of the testimony, as contained in both records, as given to the jury, under the operation of this rule, we cannot say that the decision is erroneous, and, hence the verdict must stand, unless there is some other objection to it. Moreover, as before stated, the weight and credit of the testimony are largely involved in this case, and, under the authority of *Patteson v. Ford*, 2 Gratt., 18, this Court will not reverse a judgment, where the case before a jury depends on the credibility of witnesses: and this regard for the verdict, under the circumstances, accords with the spirit of the cases hereinbefore cited. It is not perceived that any elaborate and detailed statement of the evidence is necessary here to be made, in order to sustain the view and effect of the same, which we have taken, and no rule of law would be thereby settled, and it will be omitted, as subserving no useful purpose: and this was the course pursued in the case aforesaid, in 13 Gratt., the conclusion of the court, upon the evidence alone, being stated. Under the foregoing rules and principles, there was no error in overruling the motion for a new trial, or to set aside the verdict as contrary to the evidence. See, also, Grayson's case, 6 Gratt., 712.

It is said, however, that the court erred in refusing to give the instructions, in the bills of exception, marked numbers *two* and *three* in the record. Let us examine them ; the latter part of the instruction contained in bill number *two* alone needs notice; it recites "that if the

jury believe that defendant Davis was induced to enter into the latter one, (supposing that by the "latter one," is meant the contract of July 19, 1865,) by false statements or fraudulent assurances made by said Henry at the time of so entering into it, they must find for the defendant Davis." The exact pertinency of this instruction to the issue, does not appear. The question which the jury was to determine by their verdict, was this: Had the defendant Davis knowledge of, or was he fully informed, at the time of entering into the contract of the 19th of July, 1865, of the extent of the fraud practiced upon him by said Henry, which induced him to enter into the contract of the 9th of March, 1865? Does it follow, as a necessary consequence, at all, that if Davis was fraudulently induced to enter into the contract of July 19, 1865, at *the time of so doing*, that he was not fully informed of the extent of the fraud practiced upon him, inducing him to enter into a contract of an earlier date? Moreover, the language of the instruction is ambiguous, rendering its meaning somewhat doubtful.

The *second* instruction is liable to the same objection. It is admitted in argument that it is justly liable to criticism; its meaning or construction must be determined by a course of reasoning, or by the substitution of other words than those that are employed; whether the true meaning has then been determined must still be a matter of inference, rather than absolute conclusion. Still the instruction directs the attention of the jury to a different inquiry than that contained in the issue; that simply was whether he had knowledge or full information as to a certain state of things; whereas the instruction says, whether, in effect, he had sufficient information *to induce him to believe* in a certain state of things; this is going beyond the limits of the issue. The instructions seem to be erroneous, and liable to mislead the jury, and we think there was no error in refusing them. Any question touching the time when these instructions were asked for during the progress of the trial, does not now seem to properly arise upon the record for decision.

1874.
June Term.

Henry
v.
Davis.

The attention of this Court was called during the argument, to a memorandum found in the record, that *three* bills of exception were tendered by the defendant to the opinion of the court, and which were received, signed and sealed by the court, and ordered to be made a part of the record; two bills appear upon the record Nos. 2 and 3. The inference is, that the missing bill was not copied into the record, when the same was made out; if the record is defective, the remedy is by *certioriari*. This case was submitted, without asking for the writ and the absence of the bill is no ground of complaint. Upon the review of the whole case, the proceedings and evidence, it seems to me that this Court must be satisfied with the verdict, as furnishing the facts for its decision. The parties, so far as it appears, have submitted to the jury all the evidence within their power; no sufficient exception has been taken by either party during the progress of the trial; the finding has been approved by the chancellor, who presided as a court of law, and who had all the advantage of seeing the witnesses, and observing the circumstances and influences under which they testified. Of these this Court can know nothing: in the case of *McRae's Exor. v. Woods' Exor.*, 1 Hen. and Munf. 548, being also an issue out of chancery, judge Tucker says; "ignorant of the character of the witnesses; I know not whom I ought most to credit or discredit; I must therefore confide in the opinion of the jury, who are the constituted judges in such cases:" And it is manifest i n that case, as well as others, which have been cited, that the court of appeals thought the chancellor ought to have been satisfied with the finding of the jury. Was the decree which the chancellor entered the proper one, is the only remaining question; it is for the unpaid residue of the purchase mony due upon the contract.

It has been suggested that the equity of the case did not, in the opinion of the Supreme Court of Appeals, stand alone upon the fact in the issue; that there were two others, to-wit: that Davis was still laboring under

the pressure or influence of the original transaction, or laboring under the delusive opinion that the first contract was binding upon him; and, that he was influenced to enter into the second contract, by the representations made by Henry, at the time of entering into it, that the asphaltum would be found as represented, at the time of the original purchase; and, it is now claimed that these facts should be allowed due weight in determining the final equity of the case. It is said that the Supreme Court was of opinion, that if the above facts are true, that Davis was not bound by this contract of the 19th of July, 1865. The opinion of the Court is explicitly expressed in the following language: "If Davis entered into the contract of July 19, 1865, with complete knowledge of the fraud practiced upon him in the first contract, which he was at liberty to rescind, he will be bound by it;" for which opinion authorities are cited. And, because the fact involved in that opinion was left in doubt and uncertainty, the issue was directed. The language of the Court, in reference to the two foregoing facts, was used subsequently to the announcement of the opinion above stated, and in entire subordination to it. That opinion has concluded the rights of defendant Davis in this controversy, if the fact directed to be ascertained in the issue was found against him by the verdict of a jury to which no sufficient exception could be urged, and the conscience of the chancellor should be satisfied. If entirely independent facts, not embraced in the issue could still control the final decision, it is not easy to see why the issue was directed at all. Moreover, all the proceedings in the case, and the action of the court from the beginning to end, have contemplated one or the other of the two results, either the specific performance of the entire contract, on the one hand, or its entire recission on the other.

It is obvious that the duty of the Court has been very much circumscribed and limited by the rules and principles hereinbefore cited, and applicable to its action in

cases like this; and if hardship still results from decreeing against the defendant the specific performance of a contract, springing from one all tainted with deceit and fraud on the part of his adversary, it is the unavoidable consequence of applying the law, as we understand it, to the case as it is now presented.

The decree of the circuit court of Doddridge county, rendered on the 3d day of May, 1872, is hereby affirmed, with damages and costs to the appellant.

Hoffman, Judge, not concurring in all the reasoning of the opinion delivered by Paull, Judge, filed the following opinion :

HOFFMAN, JUDGE :

In England, and in Virginia, the doctrine has prevailed, that, in a suit in equity, where there is evidence, that, if unquestioned, would sustain the plaintiff's case, which, however, is contradicted as to material facts, the chancellor, in absolute discretion, might direct an issue as to such facts, to be tried by a jury, in order to enlighten his understanding : And, that, when the trial was had, though it might appear that there was irregularity, yet if the proceeding antecedent, and the finding, were such as to satisfy the conscience of the chancellor and enable him to make a just decree, he might do so, and the decree would be effectual—beyond the province of an appellate court to reverse it.—This may still be law.—I do not now investigate the subject.

Moreover, the doctrine prevailed to some extent, that, in such a case, if the chancellor should not be satisfied with the finding of a jury, he might disregard it, and decree as if he had not directed the issue.

But, it is well settled, that an issue is not directed to enable a plaintiff to furnish evidence necessary to sustain his case.   Then, the direction or re-direction of an issue can be proper and useful only because, if the proceedings

on the trial, are not in any way illegal or inequitable, the finding should control the decision of the court.

In Virginia and in West Virginia, in a number of cases—among them, the case before us—it has been decided, that, when in a suit in equity, the testimony of different witnesses as to material facts, conflicts beyond the reach of reconciliation, and nothing paramount enables the court to decide as to the credibility of the witnesses contradicting each other, or in any way to decide the facts controverted, it is the right of the suitor to have such facts submitted to and found by a jury ; and it is the duty of the court to direct an issue for the purpose—and not to do so is error.

Then, when, according to the absolute requirement of the law, an issue has been directed, if the court might arbitrarily disregard the entire proceeding, and—as if no issue had been directed and no finding had—might find the facts and decide the case, the right of the suitor to have and the duty of the judge to direct an issue and trial by a jury, of the facts, would be utterly unavailing. Such an absurdity as, to my perception, this would evolve, is so different from the "perfection of human reason," that I cannot think it ought to be recognized as law.

Perhaps the later authorities warrant the adjudication by this Court, that, when, in a case in chancery, an issue is directed and tried, the testimony as to any one or more controverted facts so conflicts that it cannot be harmonized, if there be no other reason to set aside the verdict, it should stand and control the judgment of the court as to such facts—whether the evidence seems to the judge presiding, or the appellate court, to warrant the finding or not.—In a suit in chancery, the issue is more special as to the facts, and less embarrassed with law, than in a case at common law it generally is : And, therefore, the action of the jury is more likely to be correct, and the result of the trial ought to be more satisfactory.—It is

92

especially convenient and important to society that the law by which the conduct of its members is regulated and their rights determined, should be simple and uniform.

For the reasons I have suggested, it seems to me, that when, in a case in chancery, an issue is directed and tried and the evidence conflicts, the finding ought to be accepted as decisive of the facts found, unless for cause sufficient to set aside a verdict at law, the findivg upon the issue should be set aside.

Such an irreconcilable variance in the testimony of witnesses, as to material facts, as I have mentioned, I think exists in the case in judgment. And, if the principle I have suggested be true, this Court can not properly consider the credibility of the discrepant witnesses, or the weight of their conflicting testimony; but this Court must recognize the finding of the jury, acted on by the circuit court, as determining these matters.

In the points decided in this case, including the syllabus, HOFFMAN and MOORE JUDGES, concur with PAULL, JUDGE.

Absent, HAYMOND, PRESIDENT :

DECREE AFFIRMED.