Burks, J.,
delivered the opinion of the court.
*107 This is an appeal from certain decrees and orders of the circuit court of Northampton county. The bill was filed by William J. Eobins in his own right and as Sole heir and distributee at law of J oseph W. Eobins, deceased, against Henry H. Ayres, Willis Thompson, and the wife of said Ayres, for the specific execution of a contract made on the 31st day of July, 1866, for the sale of a tract of land called Salt Grove, in Northampton, bordering on Cherrystone creek.
The contract was in writing, signed and sealed by the parties, and a copy is filed as an exhibit and made a part of the bill. Ey the terms of the contract, William J. Eobins and Joseph W. Eobins, the vendors, described as “parties of the first part,” covenant, in substance, that they will, on or before the first day of January, 1867, convey the said tract of laud (the quantity and general boundaries of which are given), to the said Ayres and Thompson, the vendees, described as “parties of the second part,” at the proper costs and charges of the vendees, by such proper deed of conveyance as shall be tendered by them, and they (the vendors) will guarantee the title to the vendees by a clause of general warranty, and covenant that the land is free from all encumbrance.
This covenant, on the part of the vendors, is followed by other covenants, which will be best understood by giving the language in which they are expressed in the contract: “And it is hereby expressly agreed between the parties, that the said parties of the first part may give such deed of conveyance, as aforesaid, and deliver possession of the premises on the first day of Januai-y, 1867, or at any day previously to the first day of January, 1867, at the option of the said parties of the first part, and that the said parties of the second part shall accept and receive the same accordingly. In consideration whereof, the said parties of the second part do hereby covenant *108 and agree to and with the said parties of the first part, that they, the said parties of the second part, shall and will pay unto the parties of the first part, the sum of nine thousand dollars ($9,000), to be paid as follows: One hundred dollars ($100) to be paid in cash on the execution of these presents, five thousand dollars ($5,000) to be paid on the first day of January, 1867, if the said parties of the first part shall not have executed such deed of conveyance and delivered possession of the premises previously, and sooner if the said parties of the first part shall sooner execute such deed of conveyance and deliver possession as aforesaid, and upon such day as the said parties of the first part shall execute and deliver such deed, deliver such possession upon such deed being tendered as aforesaid, and the balance of said purchase money to be paid in two annual payments of equal amounts, to be secured by bonds and lien on the premises, the first payment to be made twelve months, and the other two years from the day of the said parties of the first part conveying said tract of land and delivering such possession as aforesaid, or being ready and willing so to do, and perform the covenants herein contained, on their part, with interest on said two deferred payments from date of such conveyance and possession. And it is hereby agreed between the parties that the graveyard, as now enclosed, is to be excepted out of such deed of conveyance and delivery of possession, and is to remain to the use of the said parties oí the first part and their heirs forever, free from the use and control of the said parties of the second part, and that the said parties of the first part, their heirs and assigns, may and shall have right of way to go to and from the said graveyard at all times at their will and pleasure. And the said parties of the first part hereby covenant with the said parties of the second part, that they, the said parties of the first part, shall and will, by or before the *109 first day of May, 1867, remove, or cause to be removed, the stakes marking the oyster-plantings of Messrs. Stevenson & Dunn, so that the oyster-grounds now staked out and occupied by said Stevenson & Dunn, shall be left unencumbered by the latter, and remain to the use of the said parties of the second part.”
The bill, admitting that the purchasers had made the cash payment promptly, and had also, in October, 1867, paid the sum of $4,900 in discharge of the instalment of $5,000, the latter sum being by agreement abated by $100, because of payment before delivery of possession, and further' admitting that the purchasers had made other payments at subsequent dates, alleges that they had wholly failed and refused to pay the third and last instalment of the purchase money and a part of the second, both of which instalments had been for some time due. It alleges that the purchasers were, under the contract, put into possession of the premises in December, 1867, (a short time after payment of the $4,900 as aforesaid), and admitting that no deed of conveyance had been made to the purchasers. alleges as a reason for it that the purchasers had never tendered any deed as by the contract they were bound to do, and that the vendors had always been ready and willing to execute such deed when tendered, and the surviving vendor was still ready and willing, as he had always been, to execute the deed when tendered. Besides these specific allegations, the bill alleges in general terms the performance of the contract on the part of the vendors, and readiness and willingness to perform the same, concluding with a prayer for general relief, and particularly for specific execution of the contract, and that the purchasers be required to pay the balance of purchase money remaining unpaid with interest, the complainant offering to convey the land to the purchasers by deed with general warranty and free of encumbrance, upon such deed being teh *110 derecl by the purchasers. The purchasers filed a general demurrer, and also a joint answer to the bill.
In their answer they admit the contract filed with the bill and their possession of the land under it. In addition to the payments admitted in the hill, they claim to have made other payments, and that all of the purchase money for the land has beep paid, except a portion of the third and last instalments, amounting to about $1,500, principal money, which they aver they are not bound to pay, and do not intend to pay until required by the court to do so.
They refer to the covenant of the vendors, “ that they would on or before the 1st day of May, 1867, remove, or cause to be removed, the stakes marking the oyster plantings of Stevenson and Dunn,” and aver that “it was chiefly on account of this last mentioned covenant that they agreed to pay the said plaintiff and the said Joseph "W. Robins the sum of $9,000; that it entered into the consideration of the contract, and was a part and parcel of the contract; that said contract was considered by them as a matter entire, and was executed by the parties to it as a whole.” They further aver, that this covenant has never been performed by the vendors, or either of them; that the oyster-planting grounds referred to in the covenant are still in the occupancy and under the control of the said Stevenson, thereby causing a loss and damage to the respondents equal in amount to the sum or sums claimed by the plaintiff to be due him, to-wit: about the sum of $1,500, in principal money. They further say that the said oyster-planting grounds are located in Cherrystone creek, adjacent to the land purchased by them, and that the privilege of using them was the great inducement for them to purchase the land, and without that privilege they -would not have purchased it.
After thus averring non-performance of the covenant by the vendors and the damages consequent thereon, the *111 respondents do not ask a rescisión of the contract on equitable terms; they do not offer to restore the land, accounting for rents and profits while they had possession, and to have their purchase money repaid to them; nor do they ask that the plaintiff be denied relief in equity and left to his legal remedies on the contract; but they rather submit to specific performance of the contrat, w'ith compensation to be allowed them. The language of the answer is, “that there is such a failure of consideration, defect in title, laches and non-performance of covenants, pertaining to said real estate and oyster-planting grounds, on the part of the parties of the first part to said contract, as to entitle them (the respondents) to an abatement of the purchase money, at least to the amount of the sum claimed by the said plaintiff to be due from them—that is to say, about $1,500 in principal money, and to relief in a court of equity.”
They admit that they have never tendered a deed of conveyance, assigning as a reason that the vendors had never complied with the contract on their part, and they (the respondents) did not wish to do any act that would amount to a waiver of their rights.
After depositions taken on both sides, the cause matured was brought to a hearing on the 11th day of July, 1871, when the court by its decree overruled the demurrer to the bill, ordered an account of the purchase money and payments, and directed a jury tó be empanelled to try the following issue: “ Whether the said William J. Eobins and Joseph W. Eobins, in the life-time of the latter, or the plaintiff since his death, ever removed or caused to be removed the stakes which on the 31st day of July, 18(16, marked the oyster plantings of Messrs. Stevenson and Dunn, both above and below low-water mark, so that the oyster grounds then staked out and occupied by said Stevenson and Dunn, adjacent to “Salt Grove,” were left unencumbered-by said Stevenson and *112 Dunn, and if not, what damage have the defendants sustained by the failure of the said 'William J. Robins .and Joseph W. Robins, or either of them, so to do.”
On the trial of this issue the jury found a verdict in these words: “We the jury find that the said William J. Robins and Joseph W. Robins, in the life-time of the latter, did not remove, nor has the plaintiff, William J. Robins, since the death of the said Joseph W. Robins, removed, or caused to be removed, the stakes which on the 31st day of July, 1866, marked the oyster plantings of Messrs. Stevenson and Dunn, below low-water mark; but that the defendants, Thompson and Ayres, purchased the oysters of Dunn, laid out upon the grounds occupied by him on the 31st day of July, 1866; and that the stakes marking the oyster plantings of said Stevenson above low-water mark were removed by said Stevenson. And we further find, that by the failure of the said William J. Robins and Joseph W. Robins so to remove the stakes marking the oyster plantings of said Stevenson below low-water mark, the defendants, Thompson and Ayres, have sustainad damage to the amount of two thousand, one hundred and thirty-seven dollars and fifty cents.”
This verdict the court, on the motion of the plaintiff (Robins), set aside, on the ground that it was contrary to the law and the evidence, and ordered a new trial. Ro exception was taken to this ruling, but the defendants, Ayres and Thompson, at a subsequent term of the court, moved to revoke the order setting aside the verdict and directing a new trial, on the ground that the court had no authority to make such an order. The motion was ■overruled, and the defendants excepted.
The second jury sworn to try the issue, aftér hearing the evidence, not being able to agree in a verdict, were discharged from rendering a verdict.
On the third trial the jury rendered a verdict, which is substantially the same as th» verdict rendered at the *113 first trial, with this important difference: that the amount of damages assessed by the last verdict was only $850, without interest, whereas the amount by the first verdict was $2,137.50. A motion by the defendants, Ayres and Thompson, to set aside this last verdict, on the ground that it was contrary to the law and the evidence, was overruled by the court, and they excepted. The bill of exceptions does not state either the evidence given or facts proved on the trial.
The cause was last heard on the 17th day of April, 1874, when the court, by its decree, affirming the verdict of'the jury last rendered, ordered that the defendants, Ayres and Thompson, for $350, the amount of damages by the verdict found, should have credit on the balance of purchase money owing by them for land, as shown by a special statement reforming the report of the commissioner, who, under an order of the court, had taken an account of said purchase money and payments thereon. For this balance of purchase money, subject to said credit, the court decreed personally against Ayres and Thompson, and ordered that on payment by them of the amount decreed wdthin four months, the complainant, Robins, upon tender by said Ayres and Thompson of a proper deed of conveyance according to the terms of the contract, should execute the same, and unless such payment should be made within said four months, that the land be sold, by a commissioner appointed for the purpose, to satisfy the sum decreed as •aforesaid.
The counsel for the appellants, Ayres and Thompson, have assigned various errors in the decrees and orders of the circuit court, which we now proceed to notice.
The first is, that the demurrer to the complainant’s bill was improperly overruled. The demurrer is general for want of equity, and assigns as special cause, that the *114 complainant has a plain, adequate and complete remedy at law. The allegations of the bill, admitted by the demurrer to be true, show the case of a vendor who has made a written contract for the sale of a tract of land at a stipulated price, payable in instalments; that he has good title, and is, and always has been ready to convey to the purchasers whenever they tender to him a deed of conveyance as required by the contract; that he has put the purchasers of the land in possession, as he agreed to do; that a portion of the purchase money remains unpaid, and he has a lien on the land for its payment; that he has performed the contract in all things required to be performed by him before becoming entitled to demand and receive the balance of the purchase money; that the purchasers refuse to pay the balance, and he prays that they be required to make payment, that the contract be decreed to be specifically executed, and for general relief. Such is the case made by the bill, and of course, on demurrer, we can look only to the bill. It would seem to be a plain case for the relief prayed.
But it was argued with some earnestness, that the only object of the bill is to compel the payment of a sum of money, for the recovery of which the remedy at law is plain. Ho doubt the complainant might have brought his action at law. He had that remedy, but it was neither adequate nor complete, and it is for that reason that he is admitted into equity. Perhaps the most general, if not the most precise, description of a court of equity, in the English and American sense, is, says Mr. Justice Story, that it has jurisdiction in cases of rights, recognized and protected by the municipal jurisprudence, where a plain, adequate, and complete remedy cannot be had in the courts of common law. The reme4y must be plain; for if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate; for if at law- it falls short of what the party is *115 entitled to, that founds a jurisdiction in equity. And it must be complete; that is,it must attain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of the parti7 in a perfect manner, at the present time, and in the future; otherwise, equity will interfere and give such relief and aid as the exigency of the particular case may require. 1 Story’s Eq. Juris. § 33.
Noiv, an action at law by the vendor against the purchaser on an executory contract for sale to recover the purchase money due him, does fall short of what he is entitled to. It does not reach the whole mischief and secure the whole right of the vendor in a perfect manner. He may have his judgment in a court of law, and by execution pursue the personal property of the purchaser. lie can go no further. He is entitled under his contract to more perfect relief. He has not only the right to a personal judgment against the purchaser and to subject his personal estate, which he may do in a court of law, but he has the right to subject the land for which the purchase money is owing. He has a lien upon it, which a court of law does not recognize and cannot enforce, and which is recognized and can be enforced only in a court of equity. In the latter forum he is entitled to a personal decree, and at the same time and in the same suit to a further decree for the sale of the land, if the personal decree be not satisfied. This is executing the contract fully, according to the agreement and intention of the parties, and this only is giving adequate relief, doing complete justice in the case.
Moreover, there is a peculiar reason why the vendor is admitted into a court of equity. The general rule is, that equity withholds aid by way of specific performance of contracts, unless the remedy is mutual between the parties; and it is the principle of mutuality, it is said, which has led to the practice of compelling specific *116 performance of contracts for sale against the purchaser, when in fact the claim against him made by the bill is only the sum of money agreed to be paid. How, equity originally interfered to effect the performance of.contracts, in order to give the party the interest contracted for, and at the instance of the purchaser. Hut when once that jurisdiction was assumed, the principle of mutuality compelled equity to assist the vendor. 2 Lomax Dig. 56 (marg. page).
Passing from the bill to the answer and proofs, including the verdict of the jury approved by the court, it is contended by the counsel for the appellants that the covenant of the purchasers to make payment of the last two'instalments of the purchase money, is dependent on the covenant of the vendors to remove or cause to be removed the stakes marking the oyster-planting of Stevenson & Dunn, and that the performance of the latter covenant was a condition precedent to the performance of the former; and inasmuch as it clearly appears that the vendors never performed their covenant, they were in no condition to require the purchasers to perform theirs, and it is assigned as error, that they were so required by the last decree of the circuit com’t.
Certainly, a party seeking the aid of a court of equity to compel another to perform his contract, ought to show himself prompt and ready and willing to peform the contract on his part, and if performance by him is a condition precedent to the right to demand performance of the other, he ought to show such performance, or at least a tender of it. It is often very difficult to determine whether covenants are dependent or independent, and to arrive at just and satisfactory conclusions by applying the rules of construction" in such cases. There is, perhaps, no breach of the law, says Judge Daniel in Roach v. Dickinsons, 9 Gratt. 154, in which is to be found a larger number of decisions or a greater apparent conflict *117 of authorities than that in which the effort has been made to define the dependence and independence of covenants, and to designate the class to which anj? given case in dispute is to be referred. The great effort, however, in the more recent decisions has been to discard, as far as possible, all rules of construction founded on nice and artificial reasoning, and to make the meaning and intention of the parties, collected from all the parts of the instrument rather than from a few technical expressions, the guide in determining the character and force of their respective undertakings.
We think it quite clear that the covenants to execute the deed of conveyance when tendered and deliver possession of the premises, and the covenant to pay the first instalment of $5,000, are dependent and to be performed simultaneously. It was contemplated that these covenants should be performed on or before the 1st day of January, 1867, and it is provided that the last two instalments should be paid at one and two years, respectively, from the day the vendors made the deed and delivered possession, or were ready and willing to do so. The stakes were to be removed from the oyster plantings of Stevenson and Dunn “by or before the 1st day of May, 1867,” which would be prior to the time at which the second deferred instalment would become payable, if the covenant for the execution of the deed and delivery of possession were performed, or performance tendered within the time stipulated. This would seem to indicate an intention that the removal of the stakes was to be a condition precedent to the payment of the last two instalments of purchase money. This construction would seem, too, to be required by the language used in fixing the time for the payment of these two instalments—“the first payment to be made twelve months and the other payment two years from the day of the said parties of the first part conveying said land and delivering *118 such possessioii as aforesaid, or being ready and willing so to do, and perform the covenants herein contained on their part,” &c. The last clause of the sentence is awkward in its relation to what immediately precedes it; but regarding it in the connection in which it is used, it would seem to be intended to require that the vendors should perform, or at least tender performance, of all the covenants contained in the contract to be performed on their part before payment of these last two instalments should be exacted. But taking this construction to be the correct one, the purchasers, in their dealings with the vendors, do not appear to have insisted on its enforcement, but rather to have waived it; for, although the stakes had not been removed within the time stipulated, nor indeed removed at all, they nevertheless proceeded to make payments from time to time on the last two instalments, so that on the 12th day of November, 1869, of the $4,000, aggregate of the two instalments, with the interest thereon, there remained unpaid only about $1,700 principal money. And in their answer to the bill, as before stated, they do not ask for a rescisión of the contract, but claim damages and indicate a willingness to accept performance with compensation. Hence the issue directed by the court, a proper mode of ascertaining the damages, aud to which proceeding, it does not appear, that any objection was made. See Nagle v. Newton, 22 Gratt. 814.
But it is insisted that the damages allowed were inadequate, and that the circuit court erred in setting aside the first verdict, and also in refusing to set aside the last. As has been already stated, no exception was taken to the action of the court setting aside the first verdict, and the bill of exceptions taken to the refusal of the court to set aside the last, states neither the evidence given nor the facts proved on the trial.
It is impossible, therefore, for this court to say that error was committed where none is shown. Fitzhugh's *119 ex'or s v. Fitzhugh, 11 Gratt. 210. In the absence of any statement in the record, showing what evidence was before either jury, it is useless to speculate on the causes for the difference in the amount of damages allowed in the two verdicts. The learned judge who directed the issue and presided at both trials, was dissatisfied with the first verdict and approved the last. The presumption is that his rulings were right. There is nothing in the record to show that they were wrong. The depositions in the record were taken before the issue was directed. Whether they were read on the trial, and if read whether there was other evidence before the jury, and if so, what that evidence was, does not appear. The weight and force of the depositions, so far as they relate to the issue, may have been impaired, and for aught that appeal’s, entirely overcome by other evidence not in the record. Some of the witnesses, in their depositions, on their basis of calculation, put the damages of the defendants at high figures, while Stevenson, who is presumed to be better acquainted with the subject than any one else, says that he did not occupy one acre in twenty of the oyster-planting grounds adjacent to Salt Grove shore, and of the grounds not occupied by him, the defendants occupied three-fourths, the residue being unoccupied; that they might plant oysters for fifty years, and if they did not plant more on an average than they had for the last four years, they need not plant any two years the same ground, and there would be enough ground for them to do so adjacent to the Salt Grove shore, unoccupied by him.
There is an assignment of error in the petition for appeal—which, however, was not much relied on in the argument—and that is, that the judge presiding at the first trial of the issue was without jurisdiction to set aside the verdict of the jury; that the trial was on the law side of the court, and a motion to set aside the verdict *120 and for a new trial could only be piopeily made in the chancery cause after the verdict and proceedings on the trial had been duly certified from the law to the equity side of the court.
This assignment of error would seem to be based on a misconception of the proceedings. The court, in its order made in the chancery suit, directing an issue, uses this language: “That a jury be empanelled at the bar of this court to try the following issue,” &c., and the decree reciting the verdict rendered by the jury, recites it as “ the verdict of the jury empanelled at the bar of this court,” &c. The orders and proceedings during the trials, as disclosed by the record, are such as might have been entered as well on the chancery order-book as on the law order-book, and it is to be inferred that they were entered on the former as a part of the proceedings in the chancery suit, as there is- in the record no certificate of the verdict and proceedings from the law side of the. court showing that the trials were had on that side.
But practically it can make no difieren ce on which side of the court making the order an issue directed in a chancery suit is tried. It may be tried on either side, (Code of 1873, ch. 173, § 4,) and the proceedings would be the same and the orders the same, except that when the trial takes place on the law side, it would be more regular if the proceedings were certified to the court on the chancery side.
Upon a bill filed under the 10th section of chapter 141 of the Code of 1860 (§ 12, ch. 137, Code of 1873), it is provided, that “the court shall cause an issue to be made and tried at its bar by a jury, whether or no the transaction be usurious.” The issue ordered under this section in the case of Brokenbrough's ex’ors v. Spindle’s adm'r, 17 Gratt. 21, to be tried at the bar of the court which made the order, was tried on the laxo side of the court, xühere a nexo ix'ial xoas granted and had, and the pro *121 ceedings were certified from the law to the chancery side. One of the questions raised in the case, was as to the regularity of the proceedings. J udge Moncure, in his opinion, concurred in by J udge Joynes, said: “ The statute seems to contemplate that all the proceedings, including the trial of the issue, are to be had in the chancery cause, instead of having the issue tried on the law side of the court, and the verdict and other proceedings on the trial certified from that to the chancery side of the court, according to the formality' observed in the case of an ordinary issue out of chancery. I can see no well-founded objection to the former course, and it seems to be recommended by its simplicity and directness. The latter, however, was pursued in this case. But the difference is only in form, and the substance and effect are the same. All the proceedings xoere conducted before the same court, and ought to be regarded as proceedings in one and the same suit.”
Only one assignment of error remains to be noticed, and that is the refusal of the court on one of the trials of the issue, to permit certain questions to be answered by a witness, to which action of the court a bill of exceptions was taken. It is a sufficient answer to this assignment of error, that it does not appear by the record to which of the trials the bill of exceptions refers. It may as well refer to one as to another, so far as the record discloses. The verdict on the first trial was set aside, erroneously as the appellants contend; on the second the jury were discharged from rendering any verdict, and there is nothing to show that the bill refers to the last. It is worthy of notice, too, that no such assignment of error is made in the petition for appeal, prepared by the counsel, we presume, who represented the appellants in the court below, and was not the same counsel who argued the case here. The omission of this *122 assignment in the petition may have been because the counsel knew that the bill of exceptions had reference to the first or second trial, and not to the last. If, however, it appeared that the ruling excepted to was on the last trial, we should still be of opinion that no error was committed in excluding the questions and answers.
The court is of opinion there is no error in the decrees and orders complained of, and that they should be affirmed.
Decree affirmed.