# Wheeling,

## HENRY et al. v. DAVIS.

(*Absent, Haymond, Judge.)

Decided May 4, 1878.

1878
Special Term.

1. In a trial of an issue out of chancery it is the duty of the court presiding at the trial of such issue, to sign bills of exceptions to its opinion, as in trials of law-issues before a jury.

2. A Judge, by *mandamus* may be compelled by the Supreme Court of Appeals to sign a bill of exceptions to his opinion in the trial of an issue out of chancery, where such bill of exceptions states fairly the truth of the case involved therein.

3. Where an issue out of chancery has been tried in the court below, and verdict rendered, which is satisfactory to the Court; and a decree rendered, based on such verdict, and, pending the trial of the issue, the defendant therein excepts to an opinion of the court, refusing to permit evidence to be introduced to the jury by such defendant, and the judge refuses to sign a bill of exceptions to such opinion, and the defendant appeals from the decree to the Supreme Court of Appeals, and does not apply to that court for a *mandamus*, to compel the judge to sign a bill of exceptions, but proceeds to have his cause heard and determined by the Supreme Court of Appeals, without such bill of exceptions, and the decree is affirmed; the defendant has waived the benefit of such exceptions, and cannot afterwards be heard, to complain of the action of the judge in refusing to sign such bill of exceptions.

4. A fact, which has been directly tried and decided in a court of competent jurisdiction, cannot be controverted again between the same parties, in the same or any other court. But, to

*In the cause below.

make it *res judicata,* it must have been directly, and not collaterally, in issue in the former suit.

5. The clause in the Constitution, requiring the Supreme Court of Appeals to "decide every point, fairly arising upon the record, and give its reasons therefor in writing" is directory, and does not affect the common law doctrine of *res judicata.*

6. The decree of the Supreme Court of Appeals upon a question, decided by the court below, is final, and irreversible; and upon a second appeal in the cause, the question, decided upon the first appeal, cannot be reviewed. In such case the conclusiveness of the decree of the Supreme Court of Appeals is the same, whether the first appeal was from a final, or interlocutory decree, of the court below.

7. When the Supreme Court of Appeals makes a decree, and sends the cause back for further proceedings, there cannot be a bill of review to correct the decree of such court for error apparent.

8. When the Supreme Court of Appeals has executed its power, in a cause before it, and its final decree or judgment requires some further act to be done, it cannot issue an execution, but will send its decree or judgment to the court below to be executed. Whatever was before the court, and disposed of, is considered finally settled. The inferior court is bound by the decree or judgment, as the law of the case, and must carry it into execution. The court can examine it for no other purpose than execution, or give any order, or further, relief; or review it on any matter, decided on appeal, for error apparent.

9. By *error apparent* is meant, such as appears upon the face of the proceedings; and that includes all, that was included in the issue; but a bill of review, or supplemental bill in the nature of a bill of review, will lie for after-discovered evidence, subject to the rules applicable thereto.

Appeal from a decree of the circuit court of Wood county, rendered on the 7th day of August, 1876, in a a cause in said court then pending, in which Eugene Henry and others were plaintiffs and Henry G. Davis was defendant, granted on petition of said Davis.

Hon. James Monroe Jackson, judge of the fifth judicial circuit, rendered the decree complained of.

JOHNSON, JUDGE, furnishes the following statement of the case :

After this case had been tried before the appellate court upon appeals from decrees of the circuit court of Doddridge county, upon the first of which the decree of the court below was reversed, and an issue out of chancery directed, and the cause remanded for the trial of the issue, and further proceedings to be had ; and upon the trial of the issue and verdict found against Davis, which was satisfactory to the court below, and upon which a decree was entered against Davis, from which he appealed ; and upon the second appeal, the decree of the circuit court was affirmed. The defendant on the 15th day of July, 1874, filed in said cause, in the circuit court of Doddridge county, what he called a "supplemental bill in the nature of a bill of review," which bill is in substance as follows :   "That in June, 1866, one Eugene Henry commenced a chancery suit in your honor's court against your orators, Benjamin F. Martin, Benjamin Wilson and T. R. Knight, seeking to enforce by decree the payment of the purchase money, claimed by him to be due from your orator to him and the said Wilson, for the purchase of parcels of land in said county of Doddridge, one of three hundred and thirteen acres, the other of fourteen acres, in accordance with the terms of the sale thereof, set forth in a written contract, made between the said Henry and your orator, one bearing date the 9th of March, 1865, and the other bearing date the 19th of July, 1865.

"To this claim of said Henry, set forth in his bill filed in said cause, your orator filed his separate answer to the bill, admitting the execution of the two contracts, but alleged, that he was induced to make them by false and fraudulent misrepresentations of the said Henry of the great value of said land, because of a thick vein of asphaltum coal, which he had discovered, underlying the said land at the depth of one hundred and eight feet from the surface ; that at the next term of the court, after

filing his answer to said bill, he filed his cross-bill against the said Henry and Wilson, the latter, as alleged in the original bill, being the owner by assignment from said Henry of $800.00 of the purchase money, claimed to be due under the contract of July 19, 1865.

"By the said cross-bill it was alleged, that the said contract of the 9th of March, 1865, was entered into by your orator, and a large sum of money paid in accordance with the terms thereof, through the false and fraudulent statement, made by said Henry, of the valuable discovery, made by him, as above stated; and that afterwards, and before the deceit and fraud of said Henry was discovered, with a view to obtain other money from your orator, with similar false and fraudulent assurances induced your orator to enter into the contract of the 19th of July, 1863, and obtained other large sums of money thereon; and, by reason of the said fraud of said Henry, your orator, in his said cross-bill, prays to be relieved from the said contract, and restored to his money, so fraudulently obtained by said Henry.

"Process to answer the said cross-bill was issued, and served upon said Henry and Wilson, and such proceedings had, that at the April rules, 1869, held for said court, the said cross-bill was taken for confessed, as to the defendants.

"Afterwards, on the 25th day of October, the said Henry filed his answer to said cross-bill, to which the plaintiff replied generally; that such proceedings were had, that on the 8th day of May, 1869, a decree was rendered, in favor of said Henry and Wilson, on the original bill, for the amount of their claim, and upon the cross-bill, dismissing it with costs.

"The said original bill and exhibits, the answer of defendant and exhibits, the cross-bill and exhibits, and answer of Henry thereto, together with the record of the proceedings therein, are made part of this bill. That from the decree rendered as above, your orator appealed to the Supreme Court of Appeals; and such proceedings

were had therein, that on the 24th day of February' 1871, it was considered and adjudged, that said Henry obtained the first of said contracts from your orator, through artifice and misrepresentation ; and that it was such fraud as could not be detected by any reasonable diligence on the part of your orator ; a ruse so studied and a misrepresentation, though gross, so well concealed, was well calculated to deceive the most vigilant and discreet ; that a confirmation of such a contract, is so inconsistent, so likely to be connected with fraud, that it ought to be watched with the utmost strictness, and stand upon the closest evidence, as an act done with all the deliberation, that ought to follow a transaction, the effect of which is to ratify that, which in justice ought never to have taken place.

"And for these, among other reasons stated by the Court of Appeals in its opinion, it was adjudged and decreed, that said decree of your Honor's court of the 8th May, 1869, be reversed, with costs, and the cause remanded to said circuit court of Doddridge county, with directions to make up and try at the bar of said court an issue, whether the said Henry G. Davis, at the time of entering into the said contract of the 19th July, 1865, with the said Eugene Henry, had knowledge, and was fully informed, as to the extent of the fraud, practiced upon him by the said Eugene Henry, which induced him to enter into the said contract on the 9th March, 1865.

On the 27th day of April, 1871, the said circuit court, in accordance with the decree of the Supreme Court of Appeals in said cause, directed the said issue, and that, upon the trial thereof, the proof should devolve upon the said Henry to show, that the said H. G. Davis had had such knowledge of such fraud.

And that afterwards, on the 31st day of August, 1871, a jury was impaneled and sworn to try the said issue, and on the 7th day of September, 1871, rendered the following verdict, viz : 'We the jury find, that the said Henry G. Davis, at the time of entering into the said

contract of the 19th day of July, 1865, with the said Eugene Henry, had knowledge of, and was fully informed as to the extent of, the fraud practiced upon him by the said Eugene Henry, which induced him to enter into said contract of the 9th of March, 1865.'

"That, upon the trial of said issue, your orator offered in evidence to the jury a deposition of one Thos. W. Hostetter, taken and filed in the said cause on the 18th day of October, 1869, found in the original printed record, commencing on page 88 thereof, in which there was exhibited, and filed thereafter, as parts thereof, a number of letters numbered from 1 to 11 inclusive; the non-residence of the said Hostetter in said county of Doddridge, at the time, having been proved and admitted, the plaintiff in the issue objected to so much of the deposition, being read to the jury, as consisted of the said letters, for the reasons endorsed on the said deposition, as follows: 'The said Eugene Henry objects to the said letters being offered and relied upon as evidence. It is the party's own declaration, offered in his own behalf, an ingeniously arranged scheme, by which a party offers to become his own witness, which, it is suggested, is subversive of the fundamental rules of evidence, and against the practice.'

"And the court sustained the said objection, and refused to permit the said letters, or any of them, to be read in evidence to the jury, and thereafter your orator, by his counsel, excepted to the said action, and announced to the court his exceptions. This was the first exception, taken to the action of the court, in the cause upon the trial of the said issue. During the trial of the said issue, two other exceptions were taken to the judgment of the court, each one to the refusal of the court to give instructions to the jury, which had been asked for by your orator's counsel, as he is informed and believes.

"Your orator is further informed and believes, and so charges, that during the same term of the court, after the jury had rendered its verdict upon said issue, a bill

of exceptions to the ruling of the said court in relation to the said deposition of said Hostetter, stating truly the facts, as they occurred, in relation to said ruling, was prepared by his counsel, marked 'No. 1,' and at the same time he prepaied said other bills of exceptions in relation to the judgment of the court in refusing to give the instructions prayed for, as above stated, and marked respectively, 'Nos. 2 and 3,' and presented them to C. J. Stewart, the judge of the said court, then presiding at the trial of said cause, for his signature thereto to make them parts of the record thereof. He expressed himself satisfied with the truth of the statements, contained in said bills, and made an order of the said court, upon the record thereof, that the said three bills of exceptions had been tendered by the defendant, which were received, signed and sealed by the court, and ordered to be made part of the record of said cause.

"At this time there had been another bill of exceptions, besides the three heretofore named, prepared and tendered. At the time the said bills were so tendered for signature, the two numbered respectively two and three, relating to the instructions prayed for and refused, were signed; but the signing of the bill of exceptions, relating to the exclusion of the testimony of witness Hostetter, marked No. 1, and which related to the action of the court in the presence of the counsel for the plaintiff, Henry, was then withheld by the said judge, to give an opportunity to the counsel of said Henry, if they should desire, to suggest any other facts, to be inserted in the said bill before filing the same, as the said judge then so stated. That he is informed and believes, that upon said issue that part of the said deposition of said Hostetter, so excluded by said court, was material and important, and is informed, that it was proper evidence to go to the jury, and that in excluding it the court erred, and that through the aid of his counsel, he neglected nothing in the premises to secure for himself the right to have the error of the court reviewed by the Appellate Court.

"And the order of the court, made at the time the said bill was so tendered, and the reasons assigned at the time by the judge of the court for withholding the signature, and filing the said bill of exceptions at that time, and the assurance given him, that it would be signed and filed, left no reason to doubt, that if it was error to exclude from the jury the said testimony, there would be secured to your orator an opportunity to be relieved from the effect of an erroneous verdict, or a verdict had without a fair trial, by an appeal therefrom.

"But afterwards, on the 3d day of May, 1872, when the counsel for said Eugene Henry were present, and had the opportunity to, and did, suggest some changes in the said bill of exceptions 'No. 1,' though merely as to the form of objections to the evidence excluded, and in no way changing it materially, the said judge, sitting in said court, did refuse and decline to sign, or permit the said bill of exceptions to be filed, as part of the record in said cause, giving no other reason therefor, than that he did not remember, that any exceptions had been taken by the defendant to the action of the court in excluding the testimony of Hostetter, as above described, and refused to give any bill of exceptions upon the subject for the said reasons, whereby your orator was most unjustly deprived of a fair and impartial trial of the said issue, and the right to have the action of the court trying it reviewed, and the errors committed by it corrected by such means, as these herein set forth.

"On the last day, above mentioned, the said circuit court of Doddridge county, having refused to sign and seal the said bill of exceptions, and having overruled the motion, made by your orator on the day the said verdict was rendered, to set it aside, proceeded to render an interlocutory decree, that your orator should pay to said Henry $10,353.83½, with interest thereon from the 26th day of April, 1872, and to said B. Wilson, $1,119.33⅓, with interest thereon from the same date, and costs of the suit; and directed, that, unless your orator should

pay said sums within thirty days from the rising of the court, then A. Brooks Fleming, who was appointed a commissioner for the purpose, should proceed to sell said tract of three hundred and thirteen acres of land. The said decree and order, herein referred to, are among the proceedings in the said cause of E. Henry against your orator and others, as well as the said bills of exceptions, referred to herein, all of which are asked to be made parts of this bill.

"That from said interlocutory decree, directing the payment of money and costs aforesaid, and dismissing the cross-bill, an appeal was taken by your orator to the Supreme Court of Appeals, for errors in refusing to give the instructions asked for in bills of exceptions Nos. 2 and 3, and for overruling the motion for a new trial. The cause was heard in the Supreme Court of Appeals, upon the errors assigned to said decree, and the same was affirmed, and remanded for further proceedings to be had therein, and the same now continues and remains in the said court.

"Your orator is informed, that a decree rendered, as the one herein referred to was, upon the verdict of a jury obtained in a manner contrary to the rules of a court of law, as above stated, will not be permitted to stand, but will be reversed and annulled.

"Your orator has no other remedy in the premises, by which he may be relieved from the illegal, irregular and fraudulent means and proceedings, by which said verdict was obtained, than appeal to this Court in the cause aforesaid. Your orator therefore prays, that the said Eugene Henry and Benjamin Wilson be made parties defendant to this bill, and required to answer the same. And that the said cause, in which said decree was rendered, be heard upon the facts and matters, hereinbefore stated, and together with them ; and that the plaintiff may have a new trial of said issue in the said cause, and such other and further relief as the nature of the cause may require."

Before the filing of said supplemental bill, the causes

had been removed from the circuit court of Doddridge county to the circuit court of Wood county. There was a demurrer filed to the bill by the defendant Henry; and said Henry also filed his answer, to which a general replication was filed. The answer of Henry admits, that the general history of the case, and the proceedings therein in the courts are correctly stated in the bill; but he denies, that "the issue was tried in the manner charged in the bill. He denies, that the only exception to the reading of the deposition was that endorsed thereon, as referred to in the plaintiff's bill; but all exceptions, that could or ought to have been made to the reading thereof, were made.

"Denies, that the plaintiff by his counsel at that time, or any other time during the trial of the said issue before the jury, excepted to the action of the court, in refusing to permit the said letters, or any of them, to be read in evidence to the jury; and denies, that he announced to the court his said exceptions to the ruling of the court, as charged in the bill.

"That he does not of his own knowledge know, but he has been informed and believes, and therefore denies, that the Hon. C. J. Stewart the Judge, who presided at the trial of said issue, ever promised or agreed to sign and make part of the record any bill of exceptions, relating to the exclusion of the testimony of Hostetter.

"Denies, that the judge of the circuit court of Doddridge county ever made, or directed to be made, any order, making part of the record any bill of exceptions, relating to the exclusion of the testimony of Hostetter.

"Denies, that the testimony of said Hostetter excluded was material, or proper to be allowed to go in evidence on the trial of said issue.

"Respondent notices, that the said plaintiff is careful, not to charge in his bill, that the said letters, filed with the deposition of Hostetter, were not read in evidence to the jury on the trial of the said issue; but respondent avers, and charges, that the said letters, from 1 to 11

both inclusive, were in fact read in evidence to the jury on the said trial of the said issue; and said Davis had the full benefit of them for all they were worth.

"Denies, that the remedy of the said plaintiff is in a court of chancery by bill, if he has any remedy for an injury, which he has never sustained.

"Denies, that any fraud was practiced on the said plaintiff on the trial of said issue."

Depositions, *pro* and *con*, were taken, as to what was done upon the trial of the issue.

Hon. C. J. Stewart, the judge, who presided at the trial, says: " I recollect, when the deposition of Hostetter was read before the jury in behalf of the defendant, Henry G. Davis, that it was proposed by the counsel for defendant to read certain letters and communications, purporting to be from Henry G. Davis to Hostetter, and objections were raised by plaintiff's counsel to the reading of the said letters and communications, which objections at the time were sustained by the court; and the letters were not read in connection with Hostetter's deposition.   Henry G. Davis was afterwards put upon the stand, to testify in behalf of himself; and the letters, referred to in Hostetter's deposition, were identified by Henry G. Davis, and were by him read to the jury in connection with his testimony.   At the time the deposition of Hostetter was read, the court sustained the objection, raised by the plaintiff's counsel, to the reading of the letters.   Either Mr. Boggess or Judge Camden, I cannot say which, intimated to the court, that he would except to the opinion of the court.   No bill of exceptions was tendered or signed at that time; and after the letters, referred to, were read by Henry G. Davis in his testimony, I thought the difficulty was all settled in regard to the letters, no objection being raised to the reading of the letters by Henry G. Davis.   My attention was not again called to it; and it had entirely escaped my recollection at the end of the long and protracted trial, that any ruling had been made by the court in regard to

the letters, referred to. At the end of the trial, which had lasted for several days, and after the jury had brought in their verdict, Mr. Boggess prepared a bill of exceptions in reference to the excluding of the letters. I then remarked to Mr. Boggess that I had no recollection of the ruling of the court upon that subject; as I have before stated, I had no recollection of the matter. But my mind was afterwards refreshed; and as my memory now serves me, the ruling was made as before referred to. I declined to sign the bill of exceptions No. 1, so styled by Mr. Boggess. My reason for not signing the bill of exceptions, marked No. 1 by Mr. Boggess, on the day the verdict of the jury was brought in, and the bill of exceptions marked No. 1 was tendered to the court, as before stated was, that I had no recollection of the facts, embraced in the bill of exceptions; the counsel for the plaintiff having left the court, and a motion then having been made by Mr. Boggess for a new trial, I then remarked, on account of the absence of the plaintiff's counsel, that the motion for the new trial would be held over until the next term of the court, at which time, if I became satisfied of the facts, as set up in the bill of exceptions marked No. 1 by Mr. Boggess, that I would then sign. At the succeeding term of the court I then recollected, what had taken place at the trial in regard to the letters, and for the further reason, that I did not think, that it set out all of the facts, connected with the letters, I refused to sign this bill of exceptions; if the bill of exceptions had been prepared and tendered, during the trial of the case, the letters having been read by Henry G. Davis, I would then have directed, if the parties wanted to have read the letters in connection with Hostetter's deposition, to have done so, and the bill of exceptions not stating, that the letters were read upon the trial of the cause, and for the further reason, that the bill of exceptions came in at such a late day, I declined to sign it."

One of the jurors, Summers, and A. F. Haymond, one

of plaintiff's counsel, corroborated the judge, as to the letters being read on the trial by Henry G. Davis, in connection with his testimony; and I believe, this fact is not controverted by any witness, whose deposition was taken in support of the supplemental bill.

The deposition of Mr. Boggess was taken in support of the bill, and is, in substance, the same as the bill, as to what took place at the trial of the issue, and as to the bill of exceptions No. 1.

There can be no doubt, that the defendant, Davis, by his counsel, *excepted* at the time to the ruling of the court in excluding the letters, in connection with Hostetter's deposition. The bill of exceptions No. 1, which the court refused to sign, is filed with the deposition of Mr. Boggess, and is as described in the bill,

On the 7th day of August, 1876, a decree was entered in the cause, by the circuit court of Wood county, as follows :

" These causes came on this day to be further heard, upon the said supplemental bill in the nature of a bill of review, which appears to have been filed with the other papers in these causes, in the clerk's office; and process sued out thereon, and served on the defendant Benjamin Wilson on the 14th day of May, 1875, requiring him to answer said supplemental bill, which he still fails to do; and upon the demurrer of the defendant, Eugene Henry, to said supplemental bill, in which demurrer the plaintiff joined; and upon the answer of said defendant, Henry, to said supplemental bill; and the general replication thereto ; and upon the depositions, taken by both parties, upon the matters alleged in said supplemental bill, to which depositions of G. D. Camden and Caleb Boggess, so taken by the said Henry G. Davis, the defendant Henry waives all objections or exceptions, and was argued by counsel. Upon consideration whereof, it is adjudged, ordered and decreed, that the supplemental bill in the nature of a bill of review be, and the same is hereby dismissed, and that the defendant, Eugene Henry, recover of the complainant, Henry G. Davis,

his costs by him about his defense of said supplemental bill expended."

From this decree an appeal was allowed.

The two former records, as they appear in the Supreme Court of Appeals, when these causes were formerly before said Court, are made part of the record, upon the present appeal.

*S. B. Elkins,* for appellant, relied on the following authorities :

1 Rob. 20; Story's Eq. Pl. §§338, 455, 456; 3 Dan. Ch. Prac. 1748; 8 W. Va. 291; 5 Mason 303; 15 Gratt. 518; 5 Leigh 346; 13 Pet. 13; Story Eq. Pl. §407, 425; 1 Taylor on Ev. §521; 1 Phillips on Ev. 231; Stark. on Ev. 51, 87; 1 Wall. 637; 11 Pick. 308; 17 Wall. 19; 4 Pick. 378; 1 Stark. on Ev. 20; 13 Wall. 3; 24 Pick. 242; 1 Metc. 242; How. App. Ca. 705; 55 Barb. 481; 3 Ed. Ch. 213; 57 N. Y. 155; 2 Story Eq. Jur. §769; 2 Johns. Ch. 1; 2 Johns. Ch. 222.

*Robert White,* for appellant, cited the following authorities :

1 Rob. 20; 10 Leigh 587; 7 Leigh 353; Story Eql. P. §§338, 425, 426, 427, 428; Cooper Pl. 96, 8; Mitf. Eq. Pl. 94 n. 1; 3 Daniel Ch. Prac. 1748; 4 H. & M. 489; 5 Mason 503; 15 Gratt. 536; Mitf. Pl. 78; 1 Har. Ch. Prac. (Farrand's Ed.) 452; 1 Eq. Pleader 347; 1 Roll. Abr. 383; 1 Har. Ch. Prac. 352, 353; 1 Eq. Pleader 348; 4 Vin. 408; Mitf. Pl. 78; 1 Har. Ch. Prac. 352; 1 Eq. Pleader 348; 4 Vin. 407, Y; 8 W. Va. 301; 10 W. Va. 313; 2 H. & M. 463; 4 Rand. 161, 189, 329; 8 Gratt. 589; 1 Wall. 637; 14 How. 578; 1 Black. 533; 16 How. 14; 12 How. 472; 8 Wall. 397; 1 Wend. 196; 2 Dev. (N. C.) 522; 1 Gray 83; 9 N. H. 271; 11 Pick. 309; 24 Pick. 242; 1 Metc. 242; 9 Cush. 36; 11 Humph. 216; 18 Ala. 220, 343;

13 Wall. 3; 5 Pet. 189; 5 Wend. 132; 5 W. Va. 542; 4 Call 485; 6 Leigh 438; 15 Pet. 123; 11 Leigh 586; 5 Cranch 316; 6 Cranch 267; 1 Wheat. 335; 7 Wheat. 58; 1 Wheat. 355; 1 H. & M. 558; 15 Wis. 401; 21 Wis. 88; 23 Wis. 221; 8 Pa. 55; 18 Eng. L. & Eq. 16; 4 House of L. 335; 12 Pet, 491; 4 H. & M. 433; 4 Call 228; 22 Gratt. 15; 7 W. Va. 530; 8 W. Va. 301; 10 W. Va. 313 *et seq.*; 2 Atk. 40; *Id.* 178; 3 Atk. 811; 2 Ves. 596; 3 Wash. C. C. 580; 10 W. Va. 168; 2 Wash. 47; 1 H. & M. 74; 1 Wash. 90; *Id.* 203; 3 H. & M. 266; 2 Munf. 230; 4 Munf. 59; 5 Munf. 199; 4 Rand. 256; 2 Leigh 665; 11 Gratt. 402; 6 W. Va. 125-6; 6 Gratt. 482; Hempst. 538; 1 Blatshf. 332; 7 Pet. 596; Hempst. 22, 487; 27 Gratt. 78; 3 Dan. Ch. Pl. & Prac. 1653; Story Eq. Pl. §§338, 426, 477 n. 1; Mitf. on Pl. 140; 6 Simms 345; 1 Ves. Sr. 119; 1 Sch. & Lef. 336; 3 P. Wms. 111; 1 Vern. 417; 2 Ch. Ca. 153; 6 Munf. 271; 8 Leigh 114; *Id.* 316.

*C. Boggess,* for appellant, cited the following authorities:

6 Gratt. 481; 11 Gratt. 377; Acts of W. Va., 1872-3, p. 594; 1 H. & M. 385; 2 Wash. 36; 1 Call 546; 8 W. Va. 291; 3 W. Va. 393; 7 W. Va. 189; Const. W. Va., Art. 8, §3; Acts 1872–3, ch. 16, §4; 1 H. & M. 181; *Id.* 553; Code W. Va. p. 601; 4 Munf. 68; 2 Gratt. 212; 2 W. Va. 73.

*Edwin Maxwell, James Morrow, Jr.,* and *C. C. Cole,* for appellee:

The decree complained of, though interlocutory in the court below, having been affirmed by this court is a final decree. *Campbell's ex'r* v *Campbell's ex'r,* 22 Gratt. 649, 671.

No final decree of this Court can be reviewed for error apparent. *Campbell* v. *Campbell,* 22 Gratt. 649, and authorities there cited; *Pinkney* v. *Jay,* 12 Gill & J. 69; *McCall* v. *Graham & Beall,* 1 H. & M. 13; *Southard et*

al. v. *Russell*, 16 How. 547 ; *Sibald* v. *U. S.*, 12 Pet. 488; *Ex parte Dubuque & Pacific R. R. Co.*, 1 Wall 69.

Bill to review decree of this Court can not be filed without special leave of this Court, such leave to be shown in the bill. *Southard* v. *Russell*, 16 How. 547 ; *Ryerson &c.* v. *Eldred &c.* 18 Mich. 490 ; *McCall* v. *Graham & Beall*, 1 H. & M. 13 ; *Stoffins* v. *Bryan*, 2 Paige Ch. 47 ; *Vanmeter* v. *Vanmeter*, 3 Gratt. 148.

Matters set forth in the bill are not "new matter" for which a bill of review might be filed, even on leave. Lord Bacon's Ordinance, cited in *Winchester* v. *Winchester*, 1 Head. 410, 488 ; *Winston* v. *Johnson*, 2 Munf. 305 ; *Mitchell* v. *Berry*, 1 Metc. 602; *Ganett* v. *Moss*, 22 Ill. 363 ; *Mossley* v. *Graham*, 3 McLain 41 ; Story's Eq. Pl. §§337a., 423, 417 ; *Pendleton* v. *Loy*, 3 Paige 204 ; *Dexter* v. *Arnold*, 5 Mason 303.

Plaintiff having taken his appeal, and the record stating that a bill of exceptions had been saved, which did not appear in the record, he might have had a *certiorari* to bring it up ; and if it then appeared, that it had not been signed, he might have had a *mandamus* to compel the signing of it. Constitution, art. 8, §3; Acts 1873-4, p. 51 ch. 16, §4 ; Moses on Mandamus, p. 19 ; *Ex parte Crane* 6 Pet. 189 ; *Delavan* v. *Bordman*, 5 Wend. 132 ; *Douglass* v. *Lewis*, 5 W. Va. 542.

Henry failing to take steps by *certiorari, mandamus*, or otherwise, to get the bill of exceptions into the record, before the case was disposed of by the court, he waives all right to it, if he ever had any. *Evans* v. *Norris*, 6 Mich. 69 ; *Dillon* v. *Parker*, 11 Price 100; *Vickers* v. *Cannon*, 3 Ind. 29 ; *Galbraith* v. *Green, et ux.* 13 Serg. & R. 84 ; Powell on Appellate Proceedings, pp. 236-7 and authorities there cited.

It is no part of the duty of a judge to sign bills of exceptions to his rulings on the trial of an issue out of chancery ; but the remedy for any error so committed is by motion for a new trial. 2 Daniel's Ch. Pr., side page 1305 ; *Armstrong* v. *Armstrong*, 10 Eng. Ch. R. 43, or 3 Myl. & K. 45 ; *Johnson* v. *Harmon*, 4 Otto 371.

Such motion for new trial was made in this case, but not for this cause, and overruled; and it is now too late to put this cause in. 2 Daniel's Ch. Pr. 1313.

If this bill could be maintained at all, it would be for a new trial of the issue; and as such it would have to show on its face, that the evidence is material, and such as ought to produce an opposite result on another trial, all of which it fails to do, and is therefore, for this purpose, fatally defective. *Reed's case*, 22 Gratt. 924–45; *Smith* v. *McLain*, 11 W. Va. 654; *Zickafoose* v. *Kuykendall*, 12 W. Va. 23.

Again if the evidence was material for any other purpose it was only to impeach a witness; and the bill is for this reason bad. *Patterson* v. *Ford*, 2 Gratt. 18; *Southard* v. *Russell*, 11 How. 547.

Before the court could grant the relief prayed for, it must be satisfied, that the verdict was contrary to justice, and to what it would have been, if the evidence had been admitted when first offered. *Powell et ux.* v. *Mason*, 22 Gratt. 177-92; *Brockenbrough* v. *Spudler*, 17 Gratt. 28; *Althorp* v. *Comstock*, 2 Paige 488; *Head* v. *Head*, 1 Turn. &. R. 75-6.

An error in excluding evidence is cured, when the testimony is afterwards admitted without objection, *Boninger* v. *People*, 14 N. Y. 593; *Fountain* v. *Peters.* 38 N. Y. 184.

*Scott & Cole*, for appellee, cited the following authorities:

Const. Art. 8, § 3; Acts 1872-3, ch. 16, § 4; Moses on Mandamus 19; 6 Pet. 189; 5 Wend. 132; 5 W. Va. 542; 22 Gratt. 924, 946; 3 Dan. Ch. Prac. 1730-1734; 2 Johns. Ch. 490-1; 3 Johns. Ch. 124; Adams Eq. (3d Am. ed.) 397, 416, 419; 2 Dan. Ch. Prac. 1000 and n., 1029-30 and n.

Johnson, Judge, delivered the opinion of the Court:

The complaint by appellants' counsel here is, that the decree of the 3d of May, 1872, ought to be set aside, and a new trial of the issue directed, because the plaintiff in the supplemental bill, and defendant in the issue, was denied a fair trial of the issue, and through the *fault* of the judge, who presided at the trial, he did not have the benefit of the exception to the ruling of the judge, in refusing to permit certain letters to be read in evidence to the jury, which the defendant in the issue deemed material to his defense; and that the unfairness of the trial consisted in the refusal of the court to permit said letters to be read in evidence to the jury.

A memorandum in the record states, that "the defendant, by his attorney, tendered three bills of exceptions to the opinion of the court, which bills are received, signed and sealed by the court, and ordered to be made a part of the record in this cause." That memorandum was entered on the record on the 7th day of September, 1871, the day the jury rendered its verdict on the issue. Only two bills of exceptions appear in the record, to rulings of the court during the trial; and they are numbered, respectively, two and three. Another bill of exceptions appears, in the record, which is to the judgment of the court, overruling a motion for a new trial of the issue, which motion was not overruled until the said 3d day of May, 1872.

The cause was then appealed to the Supreme Court of Appeals. Before or while pending in that Court no effort seems to have been made, to have the judge, who presided at the trial, sign a bill of exceptions to his ruling, refusing to permit the Davis letters to be read in evidence to the jury. Had the Supreme Court power, to compel the signing of a bill of exceptions in a case of the trial of an issue out of chancery? In *Shanks & McRae* v. *Fenwick*, 2 Munf. 478, there was a *quære* propounded: "Whether the Court of Appeals had the

power, to coerce the judge of an inferior court, to seal and allow a bill of exceptions, regularly tendered and containing the whole truth of the cause." And also in *Vaughan* v. *Doe on demise of Green*, 1 Leigh 316, the *quære* was again propounded: "Whether, if the judge * * refuse to certify a proper statement of the facts proved, the party may take an exception for that cause, and appeal from the judgment; or ought to tender a fair and full statement of the facts proved, and upon the judge refusing to certify it, take evidence of its fairness, and then ask the Appellate Court for process, to compel the judge to sign and seal it." A similar *quære* was propounded in *Jackson's adm'r* v. *Henderson, &c.*, 3 Leigh 196. Sec. 9 of chap. 131 of the Code provides, among other things, that "in a trial of a case at law, in which an appeal lies to the Court of Appeals, a party may except to any opinion of the court, and tender a bill of exceptions, which if the truth of the case be stated therein, the judge shall sign; and it shall be a part of the record of the case. If any judge refuse to sign such bill of exceptions, he may be compelled to do so by the Court of Appeals by *mandamus;* in which case the bill of exceptions shall be a part of the record to the same extent, as if it had been signed by the judge at the proper time."

In *Douglass & Woodward* v. *Loomis, judge*, 5 W. Va. 542, this court held, that "neither the Constitution, (which then contained the same provision as to jurisdiction in *mandamus*, as the present Constitution) nor the statute (which was the same then as now) provides when and in what case it may be proper or necessary to issue the writ, nor the mode of proceeding to obtain it. In these respects the principles of the common law govern independently of the Constitution or the statutory provisions. Superior Courts, by virtue of their supervisory powers over inferior courts, have jurisdiction to compel by *mandamus* the judges of such inferior courts, to sign and seal in a proper case bills of exceptions. This power

seems to arise by reason of their appellate jurisdiction."

Whatever has been the rule in other States, it seems to have been recognized as proper and right for courts in Virginia and this State, to sign bills of exceptions to their rulings on trials of issues out of chancery. *Stannard* v. *Graves*, 2 Cal. 369; *Ford* v. *Gardner*, 1 H. & M. 72; *Fitzhugh's ex'rs* v. *Fitzhugh*, 11 Gratt. 210.

In the last case cited the court held, that upon an issue directed out of chancery, the verdict of the jury is conclusive, where there is no exception, spreading the facts proved upon the record." Of course it must be understood, that in such a case the issue was properly directed, and there were no erroneous rulings, saved upon the record, which would show that the verdict ought to be set aside.

In the case at bar, when it was before this Court, this principle was recognized, as this Court passed upon the refusal of the court below to give instructions, which appeared upon the record by bills of exceptions.

Judge Paull in delivering the opinion of the Court in this case (7 W. Va. 726) said: "The attention of this Court was called during the argument to a memorandum found in the record, that three bills of exceptions were tendered by the defendant to the opinion of the court, and which were received, signed and sealed by the court and ordered to be made a part of the record; two bills appear upon the record, Nos. 2 and 3. The inference is, that the missing bill was not copied into the record, when the same was made out; if the record is defective, the remedy is by *certiorari*. This case was submitted without asking for the writ; and the absence of the bill is no ground of complaint. Upon the review of the whole case, the proceedings and evidence, it seems to me, that this court must be satisfied with the verdict, as furnishing the facts for its decision. The parties, so far as it appears, have submitted to the jury all the evidence within their power; no sufficient exception has been taken by either party, during the progress of this trial; the finding has been approved by the chancellor, who

Syllabus 2

presided as a court of law, and who had all the advantage of seeing the witnesses and observing the circumstances and influences, under which they testified."

If the fact existed then, that the judge, who presided at the trial of the issue, and the bill says it did then exist, refused to sign a proper bill of exceptions to his ruling, refusing to permit the Hostetter letters to be read to the jury, it was the defendant's duty then to have applied to the court for a *mandamus*, to compel the said judge to sign such bill of exceptions; if he had signed it, then it would have been a part of the record, and this Court .would have passed upon the ruling of the said judge, and the defendant would have received the full benefit of his exception. This he declined to do; and for this failure so to do, says, that it would not have benefited him, as it is probable, that upon the answer of the judge the rule for a *mandamus nisi*, would have been discharged. What right has he to suppose so? It would not, under the authorities, have been discharged, unless he signified his willingness to sign a bill, stating the facts, or showing to the court, that it was not proper for him to sign it under the circumstances, or that the bill tendered to him did not state the facts. And, if he did sign a bill stating the facts fairly, or in .his return showed, that the bill tendered to him did not fairly state the facts, the rule, under the authorities, ought to have been discharged.

Syllabus 3

This court cannot presume, that the judges of the circuit courts are either corrupt, or incompetent to discharge their duties. On the contrary we presume, that they are both honest and capable; and when a judge, under the sanction of his official oath, returns an answer to a rule for a *mandamus nisi*, which shows, that he ought not to have signed the bill of exceptions tendered and that he has, or will sign a proper bill of exceptions, fairly stating the facts, the appellate court will take that statement to be true, and thereupon discharge the rule. There was no attempt made in this court to compel the

said judge to sign the bill of exceptions prepared by counsel, or any other bill, and upon the law as it stood this court affirmed the decree. It was held in *Dillon* v. *Parker*, 11 Price 53, that "a party bringing a writ of error, and thus severing the record, before he has procured the judge's seal to a bill of exceptions tendered by him at the trial, on the rejection of his evidence, waives by so doing the bill of exceptions allowed by the judge."

In *Evans* v. *Norris*, 6 Mich. 69, it was held, that "where a copy of a bill of exceptions, instead of the original, was sent up from the circuit court, in return to the writ of error, and three terms have elapsed, since the return of the writ, and issue in error has been joined, without any notice being taken of the irregularity, and no explanation is made of the delay, the court will not interfere, to require the original bill to be sent up."

The defendant having failed to complete his record by having the exceptions signed by the judge, by *mandamus*, or otherwise; and submitting to have his case heard in the appellate court on the record before it, and the decree of the circuit court, rendered on the issue out of chancery, being affirmed, all the matters in issue in the case are *res judicata*.

A fact, which has been directly tried and decided by a court of competent jurisdiction, cannot be controverted again between the same parties in the same or any other court. But, to make it *res judicata*, it must have been directly, and not collaterally, in issue in the former suit. *The W. M. & M. Co.* v. *Va. C. C. Co.*, 10 W. Va. 250 ; *Coville & Garber* v. *Gilman et al. infra.*

The fact in issue, that the said Henry G. Davis, at the time of entering into the contract of the 19th of July, 1865, with the said Eugene Henry, had knowledge of, and was fully informed as to, the extent of the fraud practiced upon him by the said Eugene Henry, which induced him to enter into the said contract of the 9th of March, 1865," as ascertained by the jury, and the

Syllabus 4

further fact, found by the decree, which was based upon said verdict, that said Henry was liable on, and should perform said contract of July 19, 1865, which was affirmed by the Supreme Court of Appeals, is *res judicata.* How then can it be interfered with?

Syllabus 5

It is earnestly insisted by counsel for appellant, that, under our Constitution it being the duty of the court to consider and decide *every point,* fairly arising upon the record, and give its reasons therefor in writing, unless *every point* is so considered, and the reasons therefor given in writing, those points, which are not specially mentioned in the opinion of the court, and no reason given in writing for the decision thereof, are not adjudicated, and may be afterwards inquired into, although involved in the issues in the case. Nothwithstanding that clause in the Constitution, if the points are involved in the issue, they are *res judicata,* although not mentioned in the opinion of the court, or noticed by counsel on either side. That clause of the Constitution is merely directory to the court, and it ought to be followed; but it does in no wise change the common law rule, as to the doctrine of *res judicata.* The contrary doctrine would lead to endless litigation; and no suitor could know, when his controversy was terminated. There would be anything but repose, in such a construction of the Constitution as that. Can this decree, affirmed as it is, be disturbed?

Syllabus 6

The decree of the Court of Appeals upon a question, decided by the court below, is final and irreversible; and upon a second appeal in the cause, the question, decided upon the first appeal, cannot be reviewed. In such case, the conclusiveness of the decree of the Court of Appeals is the same, whether the first appeal was from a final, or interlocutory, decree of the court below. When the Court of Appeals makes a decree, and sends the cause back for further proceedings, there cannot be a

Syllabus 7

bill of review, to correct the decree of the Court of Appeals for error apparent. *White* v. *Atkinson,* 2 Call 376; *Price* v. *Campbell,* 5 Call 115; *McCall* v. *Graham and Beall,*

1 H. & M. 13; *Campbell* v. *Price &c.*, 3 Munf. 227; *Bank of Virginia* v. *Craig*, 9 Leigh 399; *Tonner* v. *Lurie's adm'r*, 9 Leigh 262; *Newman* v. *Mollohan*, 10 W. Va. 488; *Western M. & M. Co.* v. *Va. C. C. Co.*, 10 W. Va. 250; *Pinkney* v. *Jay et al.*, 12 Gill & J. 69.

When the Supreme Court of Appeals has executed its power, in a case before it, and its final decree or judg- Syllabus 8 ment requires some further act to be done, it cannot issue an execution, but will send its decree to the court below to be 'executed. Whatever was before the court, and disposed of, is considered finally settled. The inferior court is bound by the decree, as the law of the case and must carry it into execution according to the mandate. They can examine it for no other purpose than execution, or give any other or further relief, or review it on any matter, decided on appeal, for error apparent, or intermeddle with it, further than to settle so much, as has been remanded. *Sibald* v. *The United States*, 12 Pet. 488: *Southard et al.* v. *Russell*, 16 How. 547; *Ex parte Dubuque & Pacific R. R.*, 1 Wall. 69.

And by error apparent is meant, such as appears Syllabus 9 upon the face of the proceedings, and that includes all, that was involved in the issue; but a bill of review, or supplemental bill in the nature of a bill of review, lies for after-discovered evidence, subject to the rules applicable thereto. It is not pretended, that in this cause there was any after-discovered evidence. The bill is filed for the purpose of correcting error, alleged to have been committed during the trial, after a decree is affirmed by the Appellate Court. It is clear, from all the authorities, that this cannot be done for errors apparent. No case has been cited in argument; and it is believed, that no case can be found, that decides, where an issue has been tried by a jury and a verdict rendered, and a decree or judgment rendered on the verdict, and the judgment or decree on writ of error or appeal affirmed by an Appellate Court, that such decree or judgment can be reviewed for any errors, committed by the court during the trial

of the issue, or at any other time, before the judgment or decree was appealed from.

An original bill, to impeach a judgment or decree for fraud committed by the court, is an unheard of proceeding. The bill, here filed, is not of such a character.

But it is insisted by counsel for appellant, that, even after a decree or judgment has been affirmed by the Appellate Court, it may, upon bill, be set aside, where it appears, that the trial was an unfair one; and the case of *Price's ex'r* v. *Fuqua's adm'r*, 4 Munf. 68, is cited to sustain the position. That case was a bill of injunction, to stay proceedings on the judgment at law, in favor of Warren, administrator of Fuqua, against Price's executor, which was affirmed by the Court of Appeals, as reported in 1 H. & M. 385. The equity stated in the bill, as appears from the report of the case, was " that the complainant had been uniformly advised by his counsel, that he need not make any defense, except that furnished by the antiquity of the bond; the legal presumption being, that the debt was paid, unless that presumption should be repelled by evidence on the part of the plaintiff; that no such evidence was offered at the trial; but the verdict was found in consequence of evidence, given in the jury room, the complainant therefore conceived, that he had not had a fair trial of his cause; that if he had been told, it was necessary or proper, he could have produced evidence on his part, to fortify the presumption, on which alone he had rested his defense; he could have proved, and was still able to prove, that his testator was abundantly able, at any time during the last twenty years of his life, to have discharged the debt; that Fuqua was a near neighbor to the said testator, was in very embarrassed circumstances for many years, sold his property for payment of his debts, and applied to testator, as a friend, to attend the sale and encourage it by bidding.

The complainant was himself present, at the time when his testator made an application to Fuqua for the

bond ; and the said Fuqua, after making some difficulty about finding it, promised, that it never should be brought against him.

The bill further stated, that Fuqua had brought several suits on bonds of old date, which were proved to have been paid, " and that the complainant, in the course of four or five weeks past, in examining the papers of his testator, had found a receipt, bearing date the 1st of May, 1775, for £49, 15s. 9d. paid to said Fuqua. He therefore prayed, that a new trial of the suit at law be granted him."

This is all the reporter gives of the bill. The cause came on to be heard in the court below on the 21st of September, 1811, when the Chancellor was of opinion, "that, so far as the law of this case has been settled in 1 H. & M. 385, it should be the rule of this court; and the allegation, that the plaintiff had uniformly been advised by his counsel not to make any defense in the suit at law, except that furnished by the antiquity of the bond, upon the authority of *Lynn et al.* v. *Montague*, 4 H. & M. 180, might have been the ground of motion for a new trial, but it was not; nor is any reasonable excuse offered for this neglect. But again : as the plaintiff had two grounds of defense, and made his election by the advice of his counsel, he should abide the consequence thereof; for he was *grossly negligent*, as he did not go prepared to defend himself by all the reasonable means in his power; and it is a little re- markable, that, while he was endeavoring to avail him- self of a new trial upon another ground, the ill advice of his counsel was not resorted to." It was therefore decreed, that the bill be dismissed ; to which decree a writ of *supersedeas* was awarded. Munford insisted, that the *mistakes*, into which the party *was accidentally* led by the advice of his counsel, together with the unforeseen circumstance of the evidence being given in the jury room, were sufficient reasons, to entitle him in *equity* to a new trial. At any rate, a credit should have been

given for the amount of the receipt, dated May 1, 1775, which was not found by the complainant until after the judgment at law. There was no *opinion* delivered in the case, the entry is, as follows :

"Friday the 12th March, 1813, Judge Roane pronounced the court's opinion, that the decree be reversed, and the case remanded to the Supreme Court of Chancery, with directions to that court, to order a new trial of the issue at law in the Supreme Court for the county of Prince Edward."

The report of this case is so vague and unsatisfactory, and the court having given no opinion therein, it is impossible to say, upon what ground the decree of the court below was reversed. It certainly could not have been, on the ground that the party was misled as to a question of law by advice of his counsel. If that was ground for new trials to be granted by courts of equity, the consequence would be alarming indeed. It may have been on the ground of the after-discovered evidence of the receipt, or the evidence given in the jury room ; and the bill may have contained the proper allegations on that subject to have justified a new trial. It would not do to be driven from the well beaten track, on the subject of granting new trials in equity, by such a vague and unsatisfactory decision.

In *Campbell's ex'r* v. *Campbell's ex'rs supra,* it was held, that when the Court of Appeals makes a decree, and sends the cause back for further proceedings, there cannot be a bill of review to correct the decree of the Court of Appeals for error apparent on the face of the record ; but there may be such a bill, to correct the decree on the ground of after-discovered evidence.

But to sustain a bill of review in such a case, the greatest caution should be observed ; and the new matters, to be sufficient ground for the reversal of the decree, ought to be very material, and newly discovered, and unknown to the party seeking the relief, at the time the decree was rendered, and such as could not have been

discovered by the use of reasonable diligence.

The bill here makes no such case as this; and it is not pretended that all the matters set up in the bill were not fully known to the party filing it, at the time the decree was rendered ; but the reverse appears to be true.

The case of *Amble* v. *Wyld*, 2 Wash. 47, is not in point, as the judgment of the court below had not been affirmed by the Court of Appeals.

The demurrer to the bill ought to have been sustained and the bill dismissed. The decree of the court was right. It would be lamentable indeed, if all the cases, which for the last five years have been passed upon by the Supreme Court of Appeals, and decrees and judgments by said court entered therein, could be reversed or set aside by the inferior courts, or by the Supreme Court of Appeals itself, because in the bill it was alleged and proven, that, by reason of the acts of the circuit judge, a fair trial had not been had. Better, far better, that in certain individual cases by such means injustice has been done, than to adopt a rule, that would throw our whole judicial system into inextricable confusion ; and suitors, until the repose of the statute of limitations came, could never be relieved of their anxiety. Litigation would never end ; and the whole country would suffer.

As to this particular case injustice may have been done. While counsel for appellant insist, that the record cannot be contradicted by parol evidence, yet by the same sort of evidence they sought to amend the record. The record by such means can neither be amended nor contradicted. If it could, it would appear in this case, that the letters, which appellant's counsel say were not permitted to be read to the jury, and by which action of the court such gross injustice was perpetrated against the appellant, were in fact read to the jury by the appellant himself. The great injustice therefor suffered by him, was inflicted by a jury of his peers upon all the evidence, he had to offer. I have not

thought it proper, in this case, to discuss, whether the letters were proper evidence.

The bill filed, by whatever name it may be called, was properly dismissed, as it showed on its face, that it contained no equity.

The decree of the circuit court of Wood county, is affirmed, with costs and $30.00 damages.

JUDGES GREEN and MOORE concurred.

